**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Champion Power Equipment Incorporated, | No. CV-23-02371-PHX-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| Firman Power Equipment Incorporated, | |
| Defendant. | |

In this patent infringement action, Champion Power Equipment, Inc. ("Plaintiff") is represented by Timothy Ziolkowski ("Ziolkowski") and Jacob Fritz ("Fritz") of the law firm Ziolkowski Patent Solutions Group ("ZPS") and by David Barker ("Barker") and Zachary Schroeder ("Schroeder") of the law firm Snell & Wilmer LLP ("Snell"). In broad strokes, Plaintiff alleges that it "directly compete[s]" with Firman Power Equipment, Inc. ("Defendant"), because each company "sells single-fuel and multi-fuel generators, power stations, log splitters," and other related products, and that Defendant has infringed 13 of Plaintiff's patents related to those products. (Doc. 24 ¶¶ 1-4.)

Now pending before the Court is Defendant's motion for a protective order. (Doc. 75.) Defendant seeks two forms of relief: *first*, a "patent prosecution bar" that would preclude Ziolkowski, Fritz, Barker, and Schroeder from performing patent prosecution work for Plaintiff for two years following the conclusion of this action; and *second*, an order affording each side the opportunity to object before its confidential information is shared with experts retained by the other side. (*Id.*)

The motion is fully briefed (Docs. 79, 82) and the Court concludes it may be decided without oral argument. LRCiv 7.2(f). For the reasons that follow, the motion is granted in part and denied in part.

**DISCUSSION**

I. Patent Prosecution Bar

    A. **Legal Standard**

"Despite provisions in protective orders that specify that confidential information may be used only for purposes of the current litigation, courts recognize that there may be circumstances in which even the most rigorous efforts of the recipient of such information to preserve confidentiality in compliance with the provisions of such a protective order may not prevent inadvertent compromise." *NeXedge, LLC v. Freescale Semiconductor, Inc.*, 820 F. Supp. 2d 1040, 1042 (D. Ariz. 2011) (cleaned up). "[T]o protect against such inadvertent compromise, a court may issue a patent prosecution bar as part of a protective order. Such a prosecution bar can operate to prevent any individual who has access to highly confidential information as part of patent litigation from also participating in . . . patent proceedings before the PTO [United States Patent and Trademark Office]." *Helferich Patent Licensing, LLC v. Suns Legacy Partners, LLC*, 2012 WL 6049746, *1 (D. Ariz. 2012).

        1. Competitive Decisionmaking

The seminal decision addressing the standards for imposing a patent prosecution bar is *In re Deutsche Bank Trust Co.*, 605 F.3d 1373 (Fed. Cir. 2010). Under *Deutsche Bank*, the first inquiry is whether each attorney to be bound by the requested prosecution bar "is involved in 'competitive decisionmaking' with its client." *Id.* at 1378.

The term "competitive decisionmaking" is "shorthand for a counsel's activities, association, and relationship with a client that are such as to involve counsel's advice and participation in any or all of the client's decisions (pricing, product design, etc.) made in light of similar or corresponding information about a competitor." *Id.* (cleaned up). As relevant here, one way an attorney can be involved in "competitive decisionmaking" is

when "trial counsel [in a patent infringement case] also represent the same client in prosecuting patent applications before the PTO." *Id.* at 1379.

"Because patent prosecution is not a one-dimensional endeavor and can encompass a range of activities, it is shortsighted to conclude that every patent prosecution attorney is necessarily involved in competitive decisionmaking." *Id.* For example, if an attorney's "patent prosecution duties . . . involve little more than reporting office actions," "filing ancillary paperwork," or "high-altitude oversight of patent prosecution, such as staffing projects or coordinating client meetings, but [involve] no significant role in crafting the content of patent applications or advising clients on the direction to take their portfolios," such work is unlikely to qualify as "competitive decisionmaking." *Id.* at 1379-80. "On the other hand, many attorneys involved in litigation are more substantially engaged with prosecution. Such involvement may include obtaining disclosure materials for new inventions and inventions under development, investigating prior art relating to those inventions, making strategic decisions on the type and scope of patent protection that might be available or worth pursuing for such inventions, writing, reviewing, or approving new applications or continuations-in-part of applications to cover those inventions, or strategically amending or surrendering claim scope during prosecution. For these attorneys, competitive decisionmaking may be a regular part of their representation . . . ." *Id.* at 1380.

    2. <u>Judicial Balancing</u>

"A determination of the risk of inadvertent disclosure or competitive use does not end the inquiry. Even if a district court is satisfied that such a risk exists, the district court must balance this risk against the potential harm to the opposing party from restrictions imposed on that party's right to have the benefit of counsel of its choice. In balancing these conflicting interests the district court has broad discretion to decide what degree of protection is required." *Id.* at 1380 (citations omitted).

As part of the balancing analysis, "the court should consider such things as the extent and duration of counsel's past history in representing the client before the PTO, the

1  degree of the client's reliance and dependence on that past history, and the potential
2  difficulty the client might face if forced to rely on other counsel for the pending litigation
3  or engage other counsel to represent it before the PTO." *Id.* at 1381. "This is no easy
4  balancing act . . . since the factors that make an attorney so valuable to a party's prosecution
5  interests are often the very factors that subject him to the risk of inadvertent use or
6  disclosure of proprietary competitive information acquired during litigation." *Id.*

Additionally, "a court must be satisfied that the kind of information that will trigger the bar is relevant to the preparation and prosecution of patent applications before the PTO. For example, financial data and other sensitive business information, even if deemed confidential, would not normally be relevant to a patent application and thus would not normally be expected to trigger a patent prosecution bar. On the other hand, information related to new inventions and technology under development, especially those that are not already the subject of pending patent applications, may pose a heightened risk of inadvertent disclosure by counsel involved in prosecution-related competitive decisionmaking . . . ." *Id.*

B. **Competitive Decisionmaking**

1. The Parties' Arguments

Defendant focuses nearly all of its competitive decisionmaking arguments on Ziolkowski and Fritz. (Doc. 75 at 3, 6-8.) According to Defendant, Ziolkowski and Fritz are Plaintiff's "longtime patent counsel" and have "a lengthy history of advising [Plaintiff] on patent strategy in terms of prosecuting both the patents [Plaintiff] asserts in this lawsuit as well as applications pending before the PTO." (*Id.* at 3.) Defendant also notes that ZPS's website "touts—under the firm website section titled 'Protect Your Space'—their ability to draft patents to protect not just . . . your product or the invention but also the space around your invention." (*Id.*, cleaned up.) Defendant contends that "[g]iven their undisputed role in crafting the content of patent applications and advising [Plaintiff] on the direction to take [its] portfolios, Ziolkowski and Fritz are considered competitive decisionmakers, making inadvertent disclosure a significant risk." (*Id.* at 7, cleaned up.)

As for Barker and Schroeder, Defendant states in a footnote: "[Plaintiff's] other counsel of record are unlikely to trigger the prosecution bar. Based on representations by [Snell] attorneys, they do not prosecute patents, let alone any in the field at issue in this lawsuit. If true, then none of their activities would trigger the prosecution bar." (*Id.* at 13 n.4.)

In response, Plaintiff argues that Defendant "failed to demonstrate why it is entitled to a prosecution bar in the first instance, including by failing to establish that [Plaintiff's] counsel are 'competitive decisionmakers.'" (Doc. 79 at 4.) According to Plaintiff, Defendant "completely fails to make this showing for Barker and Schroeder." (*Id.* at 5.) As for Ziolkowski and Fritz, Plaintiff does not dispute that they have been involved in its past prosecution efforts but contends that, under *Deutsche Bank*, such involvement does not automatically result in "competitive decisionmaker" status. (*Id.* at 5-6.) Plaintiff contends that "[t]he decisionmaking role" with respect to its patent prosecution efforts "rests firmly with [its] management team and Director of Product Development, Greg Pauken" and that "[a]lthough Ziolkowski and Fritz have worked with [Plaintiff] for a number of years, there is no evidence suggesting they have morphed into [Plaintiff's] policymakers or decisionmakers." (*Id.*) In a footnote, Plaintiff contends it should not be required to provide more details about the roles that Ziolkowski and Fritz have played in past prosecution efforts because doing so would require it to divulge privileged information. (*Id.* at 6 n.2.)

In reply, Defendant argues that it has "demonstrated a high risk of inadvertent disclosure given Ziolkowski and Fritz's substantial roles in crafting patent applications and advising on the direction of [Plaintiff's] patent portfolio—facts that [Plaintiff] does not deny." (Doc. 82 at 2-3.) Defendant also accuses Plaintiff of asking the Court to "appl[y] a non-existent test and . . . an impossible standard, [by] arguing the Court should deny the motion because Ziolkowski and Fritz are not [Plaintiff's] policymakers or decisionmakers and do not make decisions for their client. But that's not the test under *Deutsche Bank*, and [Plaintiff] cites nothing to suggest otherwise. Nor would such a test make any sense. No outside counsel would ever meet that bar because, consistent with governing rules of

ethics, the client always holds the ultimate decisionmaking authority." (*Id.* at 5, cleaned up.) Finally, Defendant argues that Plaintiff "fails to address, let alone rebut, the heightened risk caused by the fact that Ziolkowski and Fritz practice targeted patenting to help clients like [Plaintiff] maximize *market space against competitors* rather than solely to protect the client's purported inventions." (*Id.* at 6.)

        2.      <u>Analysis</u>

As noted, the first inquiry under *Deutsche Bank* is whether each putative subject of the requested prosecution bar "is involved in 'competitive decisionmaking' with its client." 605 F.3d at 1378. Unfortunately, *Deutsche Bank* is not entirely clear on who bears the burden of proof as to this issue. On the one hand, *Deutsche Bank* announces this requirement immediately after explaining that "[a] party seeking a protective order carries the burden of showing good cause for its issuance. The same is true for a party seeking to include in a protective order a provision effecting a patent prosecution bar." *Id.* Arguably, this suggests that the movant bears the burden of proving that each attorney to be bound by the requested prosecution bar is a competitive decisionmaker. However, in later portions of the decision, *Deutsche Bank* states that "the party seeking an exemption from a patent prosecution bar must show on a counsel-by-counsel basis . . . that counsel's representation of the client in matters before the PTO does not and is not likely to implicate competitive decisionmaking related to the subject matter of the litigation." *Id.* at 1381. Arguably, this suggests that the non-movant bears the burden of proving that each attorney at issue is not a competitive decisionmaker. As other courts have recognized, these passages are difficult to reconcile. *DeCurtis LLC v. Carnival Corp.*, 2021 WL 38265, *4 n.4 (S.D. Fla. 2021) ("District courts are split on how to apply the moving party's initial burden. A majority of courts require the movant to show that the bar reasonably reflects the risk of inadvertent disclosure of proprietary competitive information and that the bar as applied to specific lawyers will prevent the risk of inadvertent disclosure. Other courts only require the movant to show that a patent prosecution bar is reasonable, before shifting the burden to the party seeking an exemption from the proposed prosecution bar to

demonstrate that a specific lawyer's role will not likely implicate competitive decisionmaking . . . .") (citations omitted).

The Court finds it unnecessary to take a side on this unsettled and complicated issue because, regardless of who bears the burden of proof, it is clear that Ziolkowski and Fritz qualify as competitive decisionmakers but Barker and Schroeder do not. *Deutsche Bank*, 605 F.3d at 1378 ("[W]hether an unacceptable opportunity for inadvertent disclosure exists must be determined by the facts on a counsel-by-counsel basis.") (cleaned up).  As for Ziolkowski and Fritz, Defendant has come forward with evidence that both attorneys have extensive experience prosecuting patents on behalf of Plaintiff, including some of the patents at issue in this action. (*See, e.g.*, Doc. 77-1 at 9-111.)  Plaintiff does not, in turn, dispute their involvement in past prosecution efforts.  (Doc. 79-2 ¶ 3 [declaration from Plaintiff's owner that "[Plaintiff] has retained [ZPS] for many years to, among other things, prosecute the Patents-in-Suit on [Plaintiff's] behalf."].)  Thus, whether Ziolkowski and Fritz qualify as competitive decisionmakers turns on the substance of their involvement in those prosecution efforts. *Deutsche Bank*, 605 F.3d at 1379 ("Because patent prosecution is not a one-dimensional endeavor and can encompass a range of activities, it is shortsighted to conclude that every patent prosecution attorney is necessarily involved in competitive decisionmaking. . . .  The facts, not the category must inform the result.").

In an effort to downplay Ziolkowski's and Fritz's roles, Plaintiff has submitted a declaration from its owner avowing that Plaintiff's business executives, rather than Ziolkowski and Fritz, retain the ultimate authority to decide whether to file a particular patent application.  (Doc. 79-2 ¶¶ 7-8.)  The problem with this approach is that the competitive-decisionmaker inquiry does not turn on who has the ultimate authority to file a patent application.  Indeed, an attorney may be deemed a competitive decisionmaker simply by being "substantially engaged with prosecution," through such activities as "obtaining disclosure materials for new inventions and inventions under development, investigating prior art relating to those inventions, making strategic decisions on the type and scope of patent protection that might be available or worth pursuing for such

inventions, writing, reviewing, or approving new applications or continuations-in-part of applications to cover those inventions, or strategically amending or surrendering claim scope during prosecution." *Deutsche Bank*, 605 F.3d at 1380. The declaration from Plaintiff's owner conspicuously does not deny that Ziolkowski and Fritz engage in such activities as part of their patent prosecution work for Plaintiff and it would be surprising if they did not, given their longstanding role as Plaintiff's outside counsel for such work. Indeed, Plaintiff concedes in its response brief that it "exclusively uses ZPS to prepare and prosecute its patent applications." (Doc. 79 at 11.) *Cf. Karl Storz Endoscopy-America, Inc. v. Stryker Corp.*, 2014 WL 6629431, *3 (N.D. Cal. 2014) ("Stryker has made a sufficient showing that KSEA's counsel [Whitmyer] is engaged in competitive decisionmaking for Plaintiff based on the myriad examples of his participation in prosecuting patents for KSEA in subject matters related to the patents at issue in this case, including post-approval amendments and other arguments in favor of patentability. The most recent example of Whitmyer's active patent prosecution on KSEA's behalf dates from May of 2014, several months after this case commenced. Far from mere administrative or oversight duties, Whitmyer's filing of such amendments indicates substantial involvement in prosecution—precisely the type of activity that poses a high risk of inadvertent disclosure under the *Deutsche Bank* standard."). In a related vein, although Ziolkowski's declaration is vague as to his specific activities and responsibilities, it seems to confirm that he is substantially engaged in the substance of the prosecution activities he performs for Plaintiff, albeit while allowing Plaintiff to retain ultimate decisionmaking authority. (Doc. 79-1 at 3 ¶ 6 [acknowledging that ZPS's policies and procedures call for ZPS to "advise clients regarding intellectual property protection and enforcement and make recommendations and suggestions based on the facts presented, but ZPS never makes decisions for clients"].)[1] Under these circumstances, the Court is satisfied that Ziolkowski

---

[1] Although *Deutsch Bank* recognizes that an attorney whose involvement in patent prosecution work is limited to "reporting office actions," "filing ancillary paperwork," or otherwise performing "high-altitude oversight of patent prosecution" may not qualify as a competitive decisionmaker, 650 F.3d at 1379-80, the declarations from Plaintiff's owner and from Ziolkowski do not suggest that Ziolkowski's and Fritz's work for Plaintiff is

- 8 -

and Fritz qualify as competitive decisionmakers.

In contrast, Barker and Schroeder do not qualify as competitive decisionmakers. As an initial matter, the Court finds it notable that, in the joint notice of discovery dispute filed before the parties were authorized to pursue full briefing on Defendant's request for a prosecution bar, Defendant seemed to indicate that it was not seeking such a bar as to Barker and Schroeder: "Two sets of attorneys represent [Plaintiff] in this lawsuit: (1) patent litigators David Barker and Zachary Schroeder of Snell & Wilmer L.L.P.; and (2) patent prosecutors Timothy Ziolkowski and Jacob Fritz of Ziolkowski Patent Solutions Group. [Defendant's] concern is narrowly directed at Ziolkowski and Fritz . . . ." (Doc. 65 at 3.) However, Defendant's position has now apparently evolved, such that it believes Barker and Schroeder should also be covered by the bar because they failed to come forward with affirmative evidence to establish why they should not be covered: "As for Barker and Schroeder, . . . [Defendant] would not oppose an exemption should [Plaintiff] come forward with declarations confirming that these attorneys do not nor intend to prosecute patents in the field of multi-fuel generators or multi-fuel engines." (Doc. 82 at 11.) Although Defendant's approach is not impermissible, given the unsettled state of the law as to the burden of proof, it still strikes the Court as an overly casual way to seek a very significant and unusual form of relief, which could potentially restrict the affected attorneys' ability to practice law and pursue a livelihood. *Encap LLC v. Scotts Co. LLC*, 2015 WL 12991188, *3 (E.D. Wisc. 2015) ("The Federal Circuit has made clear that a patent prosecution bar on an outside attorney should not be lightly imposed.").

At any rate, the bottom line is that there is no evidence that Barker and Schroeder have ever prosecuted patents for Plaintiff. Nor is there any evidence that they intend to start doing so in the future. Against this backdrop, they cannot be considered competitive decisionmakers. *Deutsche Bank*, 605 F.3d at 1379 ("The concern over inadvertent disclosure manifests itself in patent infringement cases when trial counsel also represent the same client in prosecuting patent applications before the PTO.").

limited in this fashion.

C. **Judicial Balancing**

1. The Parties' Arguments

Defendant argues that a prosecution bar is necessary here in light of the nature of the information to be disclosed during discovery. (Doc. 75 at 9-10.) More specifically, Defendant notes that Plaintiff's discovery requests include a request for all documents "relating to the design of the Accused Products," including engineering specifications and circuit diagrams. (*Id.* at 3-4.) According to Defendant, the requested information thus "includes [Defendant's] proprietary competitive information that is not publicly available." (*Id.* at 4.) Defendant adds: "Confidential technical information is clearly relevant to a patent application and thus raises a heightened risk of inadvertent disclosure." (*Id.* at 9.) Defendant also identifies three reasons why it should not be required to provide, at this stage of the case, a more detailed identification of the information it seeks to protect: (1) *Deutsche Bank* does not require such a showing; (2) such a requirement would "make[] no sense" when, as here, discovery is still in its nascent stages; and (3) regardless, Defendant has already "identified data sheets, specifications, and schematics describing the internal design and operation of electrical components that cannot be easily ascertained through reverse engineering or dismantling generators." (*Id.* at 9-10.) Defendant also defends the scope of its requested prosecution bar, arguing that "[t]he bar would only apply to counsel who are involved in the prosecution of patents or patent applications," that the requested two-year duration is "reasonable," and that the bar would "prohibit prosecution activity with respect to multi-fuel generators or multi-fuel engines." (*Id.* at 10-12.) Finally, Defendant argues that Plaintiff would not be prejudiced by the requested bar because (1) Plaintiff could choose to shield Ziolkowski and Fritz from the subset of discovery materials containing Defendant's "proprietary competitive technical information," in which case the bar would not be triggered; and (2) "discovery has just started," so "[t]here is still plenty of time" for Plaintiff to "bring in an additional firm." (*Id.* at 12-13.)

In response, Plaintiff argues that even if Ziolkowski and Fritz are deemed competitive decisionmakers, a prosecution bar is unwarranted pursuant to the judicial

balancing test. (Doc. 79 at 7-15.) First, Plaintiff contends that, under *Deutsche Bank*, the type of information that might warrant a prosecution bar is information related to "new inventions and technology under development, especially those that are not already the subject of pending patent applications," yet Defendant has "failed to identify a single document falling within this category" and instead has merely identified "documents related to products already available to the general public." (*Id.* at 7, emphasis omitted.) Plaintiff also disputes Defendant's contention that the information at issue "cannot be ascertained by analyzing [Defendant's] publicly available generators," arguing that the products at issue in this case "are not chemical components, computer codes or programs, or complex biological mechanisms. They are physical, mechanical products capable of being reverse engineered." (*Id.* at 8-9.) Next, Plaintiff raises a vagueness challenge to some of the categories of information Defendant seeks to protect, arguing that Defendant's reference to "proprietary competitive information . . . could conceivably cover the entire universe of discovery in this case." (*Id.* at 9.) According to Plaintiff, Defendant "makes no attempt to connect the documents it seeks to protect with how those documents would be relevant to the preparation or prosecution of patent applications before the PTO." (*Id.* at 10.) Next, Plaintiff argues that the scope of the proposed prosecution bar is overbroad, because it would encompass such innocuous activities as paying patent maintenance fees. (*Id.* at 10-11.) Next, Plaintiff argues that it would suffer irreparable harm from the proposed bar because "[n]o one knows the Patents-in-Suit better than [Plaintiff's] currently employed patent counsel, and the decade of familiarity with the publicly issued patent claims' associated prosecution histories are irreplaceable without extreme and undue expense." (*Id.* at 11-13.) Plaintiff continues: "[Defendant] proposes a wrecking ball (the patent prosecution bar) where a more precise tool (*e.g.*, the agreed-upon AEO [attorneys' eyes only] language) is more than sufficient." (*Id.* at 13.) Finally, Plaintiff argues that Defendant did not adequately meet and confer about the specifics of the proposed protective order before filing the pending motion. (*Id.* at 13-15.)

In reply, Defendant argues that its proposed order is based on the Northern District

of California's model order (Doc. 82 at 6-7, 9); that the proposed bar is appropriately narrow in scope because it would apply only to "documents containing technical information of the utmost commercially sensitive nature" (*id.* at 7, emphasis omitted); that a prosecution bar may permissibly apply to "hardware schematics" even if those schematics do not pertain to new inventions or technology under development (*id.* at 7-8); that Plaintiff's reverse-engineering claims are "nonsensical" (*id.* at 8-9); that Plaintiff's objections regarding the scope of activities to be covered by the bar "can be easily addressed" by revising paragraph 13 of the proposed order (*id.* at 9); that Plaintiff would only suffer "minimal" prejudice from the proposed bar because Plaintiff could use its "other litigation counsel, Barker and Schroeder" to review the sensitive documents (*id.* at 10-11); that Plaintiff has not done enough to meet its burden of proof (*id.* at 11); and that Plaintiff's meet-and-confer objections are meritless (*id.* at 12).

     2.  <u>Analysis</u>

   The Court concludes, in its discretion and after performing the balancing analysis required under *Deutsche Bank*, that Ziolkowski and Fritz should not be subjected to a prosecution bar despite their status as competitive decisionmakers. This conclusion is largely driven by two considerations.

   First is the type of information that will be exchanged during the discovery process in this case. In *Deutsche Bank*, the Federal Circuit explained that "financial data and other sensitive business information, even if deemed confidential, would not normally be relevant to a patent application and thus would not normally be expected to trigger a patent prosecution bar. On the other hand, information related to new inventions and technology under development, especially those that are not already the subject of pending patent applications, may pose a heightened risk of inadvertent disclosure by counsel involved in prosecution-related competitive decisionmaking . . . ." *Deutsche Bank*, 605 F.3d at 1381. The information at issue here falls somewhere in the middle of this spectrum. Although the information will include hardware schematics, which are more sensitive than financial data (at least for prosecution-bar purposes), and although Defendant contends those

schematics relate to design features that cannot be easily reverse engineered,[2] Defendant does not contend those schematics relate to new inventions or technology under development—instead, they relate to inventions that are already patented and released on the market. The Court does not foreclose the possibility that a prosecution bar could be warranted in a case involving such schematics, but they do not, under *Deutsche Bank*, raise the same level of heightened concern as schematics related to unreleased products and inventions that are not yet the subject of patent applications. *Cf. Carlson Pet Prods., Inc. v. North States Indus., Inc.*, 2019 WL 2991220, *6 (D. Minn. 2019) ("[T]echnical and design information, *especially that which concerns unreleased products* is the very kind of information that courts have identified as deserving of protection against inadvertent use.") (emphasis added).

Second is "the extent and duration of counsel's past history in representing the client before the PTO, the degree of the client's reliance and dependence on that past history, and the potential difficulty the client might face if forced to rely on other counsel for the pending litigation or engage other counsel to represent it before the PTO." *Deutsche Bank*, 650 F.3d at 1381. The evidence before the Court establishes that Ziolkowski and Fritz have a lengthy and substantial history representing Plaintiff before the PTO—as noted, Plaintiff "exclusively uses ZPS to prepare and prosecute its patent applications" (Doc. 79 at 11)— and that Plaintiff will rely heavily on that experience in this case. It follows, in the Court's view, that Plaintiff would suffer significant prejudice if forced to rely on other counsel in this case. Courts have declined to impose prosecution bars under analogous circumstances. *See, e.g.*, *Helferich*, 2012 WL 6049746 at *3 ("Helferich clearly has a strong interest in choosing its own counsel—particularly in the complex and technical realm of patent litigation . . . [and] Counsel for Helferich . . . have represented Helferich both in litigation and before the PTO for many years and are deeply familiar with the patents at issue here. Depriving Helferich of the specialized representation that its counsel

---

[2] Although the Court views the parties' dispute over reverse engineering to be factually underdeveloped on the current limited record (Doc. 76 ¶¶ 2-3; Doc. 79-3 ¶ 10), it also views this dispute as immaterial to the ultimate question of whether to impose a patent prosecution bar, for the reasons explained elsewhere in this order.

can provide in this case would force them to rely on less knowledgeable counsel, either in this litigation or before the PTO, and thus increase costs and duplicate effort.") (cleaned up); *Trading Techs. Int'l. Inc. v. GL Consultants, Inc.*, 2011 WL 148252, *7 (N.D. Ill. 2011) ("[T]he factors in the balancing test weigh against imposing the restriction on Mr. Borsand (and on TT) that defendants seek. Mr. Borsand is TT's lead trial counsel and is intimately involved in TT's overall litigation strategy. As such, TT would face serious difficulty if forced to rely on outside counsel rather than Mr. Borsand to the extent that defendants propose. . . . Defendants do not explain how Mr. Borsand could competently discharge his responsibilities as TT's lead counsel while at the same time being kept wholly in the dark as to significant categories of evidence. Defendants' alternative suggestion that TT would not be prejudiced if Mr. Borsand could not continue to act as lead counsel is likewise a non-starter. Mr. Borsand has been TT's lead counsel in litigation involving the patents-in-suit since 2003, and he is now its lead counsel in thirteen suits in this court involving these patents. He has also tried one case involving the patents-in-suit to a successful jury verdict in 2007. The idea that TT would be unscathed if it lost Mr. Borsand's involvement as lead counsel blinks reality, and ignores the weight to be given to a party's choice of what counsel will represent it in major litigation.") (citations omitted). In reaching this conclusion, the Court acknowledges that "[t]his is no easy balancing act . . . since the factors that make an attorney so valuable to a party's prosecution interests are often the very factors that subject him to the risk of inadvertent use or disclosure of proprietary competitive information acquired during litigation." *Deutsche Bank*, 605 F.3d at 1381.

II.     Opportunity To Object Before Disclosure Of Confidential Information To Experts

    A.     **The Parties' Arguments**

The parties agree that each side should have the right to object before information that has been designated by one party as "Confidential" is disclosed to technical experts retained by the opposing party. (Doc. 79 at 15-16.) However, they disagree about whether this right of objection should also apply to disclosures to non-technical experts.

According to Defendant, the right of objection should apply to all experts "[b]ecause a non-technical expert," just like a technical expert, "cannot forget the information it learns in this litigation." (Doc. 75 at 13-14.) Defendant continues: "An accounting expert who provides financial or market advice to competitors . . . is no less likely to inadvertently misuse information as his technical counterparts." (*Id.* at 14.) Defendant also cites various cases in which the right of objection has been applied to all experts. (*Id.* at 14-15.)

In response, Plaintiff argues that Defendant has not shown "good cause" to extend the objection requirement to non-technical experts and that "[t]he only benefit [Defendant] will receive from requiring the advance disclosure of [Plaintiff's] non-technical experts is the ability to increase [Plaintiff's] costs by objecting to [Plaintiff's] experts and by gaining knowledge of [Plaintiff's] non-technical experts prior to the disclosure deadline." (Doc. 79 at 16.)

In reply, Defendant briefly reiterates its earlier arguments. (Doc. 82 at 11.)

B. **Analysis**

The Court agrees with Defendant that good cause exists to apply the right of objection to all experts, not just technical experts. The right of objection is meant to protect against the possibility that a particular expert will misuse confidential information. That risk is not limited to technical experts, so there is no reason to limit the right of objection to technical experts. Nor has Plaintiff established that Defendant's request for this commonsense and seemingly ubiquitous procedural right is part of some nefarious scheme to drive up litigation costs and derive an unfair litigation advantage.

…

…

…

…

…

…

…

Accordingly,

**IT IS ORDERED** that Defendant's motion for a protective order (Doc. 75) is **granted in part and denied in part**.

**IT IS FURTHER ORDERED** that the parties, after meeting and conferring, submit a revised proposed protective order that reflects the rulings set forth in this order.

Dated this 18th day of October, 2024.

Dominic W. Lanza
United States District Judge