WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Champion Power Equipment Incorporated, | No. CV-23-02371-PHX-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| Firman Power Equipment Incorporated, | |
| Defendant. | |

Pending before the Court is Firman's motion for leave to amend its invalidity contentions. (Doc. 115.) For the reasons that follow, the motion is granted.

**RELEVANT BACKGROUND**

On November 10, 2023, Champion initiated this patent infringement action, alleging various claims of infringement involving 10 patents. (Doc. 1.)

"[I]mmediately after Champion filed its complaint," Firman "commenced searching for prior art." (Doc. 116 ¶ 3.) "In conducting its prior art search, Firman employed internal and external resources, including its industry experts, outside counsel, and a dedicated prior art search firm." (*Id.* ¶ 4.) For example, the "industry expert . . . conducted eight weeks of independent searching focused on prior art products, systems, and components that were sold or offered for sale by companies other than Firman." (*Id.* ¶ 4(b).) The art search firm, which is "one of the nation's leading intellectual property services firms specializing in prior art searching," was retained "to conduct the most extensive and detailed level of searching it offered. The intellectual property services firm assigned a team of professional

searchers and a technical librarian who spent three-to-four weeks conducting numerous searches focusing on domestic and international patents, patent applications, treatises, technical journals, and other printed publications. This searching took place in multiple rounds with feedback provided by Firman's outside counsel at each stage." (*Id.* ¶ 4(c).)

On March 29, 2024, Champion filed its operative pleading, the First Amended Complaint ("FAC"). (Doc. 24.) The FAC asserts over 100 claims across 13 patents. (*Id.*)

On April 24, 2024, the Court issued the scheduling order. (Doc. 33.) Among other things, the scheduling order contains a detailed schedule for various "Patent-Specific Disclosures." (*Id.* at 2-9.) As relevant here, Firman was required to disclose, by August 30, 2024, its "Noninfringement, Unenforceability, And Invalidity Contentions" (hereinafter, "Invalidity Contentions"). (*Id.* at 4.) The scheduling order further provides that amendment of the Invalidity Contentions "may be made only by order of the Court upon a timely showing of good cause. Non-exhaustive examples of circumstances that may, absent undue prejudice to the non-moving party, support a finding of good cause include . . . recent discovery of material, prior art despite earlier diligent search." (*Id.* at 6.)

On August 8 and 9, 2024, Firman issued subpoenas to five entities that, in Firman's view, "likely purchased, sold, or offered for sale invalidating prior art products." (Doc. 116 ¶ 4(e).) Firman contends the identity of these five entities was "revealed" through the prior art search described above. (*Id.*) Each subpoena had a compliance deadline of August 22, 2024. (*Id.*)

One of the subpoena recipients was a company called Generac Power Systems, Inc. ("Generac"). (Doc. 123-1.) Initially, Generac responded to the subpoena by informing Firman's counsel that it needed an extension until September 14, 2024. (Doc. 116 ¶ 4(f).) Firman's counsel agreed to this extension request. (*Id.*)

In the meantime, on August 30, 2024, in compliance with the scheduling order, Firman served its Invalidity Contentions on Champion. (*Id.* ¶ 5.) "Those contentions identified over 100 prior art references and included over 5,000 pages of detailed claim

charts covering thirty-nine of them." (*Id.*)

On September 12, 2024, Generac informed Firman that it would only produce documents pursuant to a protective order. (*Id.* ¶ 6.) At the time, there was no protective order in place in this action.

On October 9, 2024, Champion brought a separate patent infringement action against Generac. That action is captioned *Champion Power Equip., Inc. v. Generac Power Sys., Inc.*, No. 2:24-cv-01281-LA (E.D. Wisc. Oct. 9, 2024).

On October 29, 2024, the parties filed a stipulation for the entry of a protective order. (Doc. 94.)

On November 4, 2024, the Court issued the parties' stipulated protective order. (Doc. 95.)

On November 8, 2024, Firman served a second subpoena to Generac (Doc. 123-2) that sought additional information, including any "prior it may have located in preparing a response to Champion's new lawsuit against it." (Doc. 116 ¶ 8.)

Between November 19-22, 2024, in response to the two subpoenas, Generac "produced 521 Documents spanning 2,525 pages and including thirty-five native files and numerous emails discussing Generac's purchase of dual fuel generators from at least two different manufacture[r]s." (Doc. 116 ¶ 9.) As relevant here, one of those emails was dated April 7, 2015 and included Greg Montgomery ("Montgomery") as one of the cc'd recipients. (Doc. 121-2 at 2-3.) Montgomery worked for Champion from 2004 to 2014, then briefly worked for Generac in 2015, and then joined Firman in or around July 2015. (Doc. 120 at 3-5 & n.3; Doc. 122 at 4.) Montgomery currently serves as Firman's president and CEO. (*Id.*)

On November 26, 2024, Firman notified Champion that "some of the prior art included in Generac's production was not previously discovered by us. We're in the process of finalizing our evaluation of Generac's productions and intend to seek leave to amend our invalidity contentions to address the new prior art." (Doc. 116 ¶ 10.)

On December 6, 2024, Firman provided Champion with its proposed amended

Invalidity Contentions. (*Id.* ¶ 11.)

Between December 12, 2024 and January 7, 2025, the parties met and conferred about whether Champion would consent to Firman's amendment request. (*Id.* ¶¶ 12-15.)

On January 17, 2025, after those meet-and-confer discussions failed to result in an agreement, the parties brought the dispute to the Court's attention via the submission of a joint motion for discovery dispute resolution. (Doc. 113.)

On January 28, 2025, the Court issued an order explaining that "the current dispute is best resolved through formal motion practice." (Doc. 114.)

On February 4, 2025, Firman filed the pending motion for leave to amend. (Doc. 115.)

On February 18, 2025, Champion filed a response in opposition. (Doc. 120 [unsealed, redacted version]; Doc. 121 [sealed, unredacted version].)[1]

On February 25, 2025, Firman filed a reply. (Doc. 122.)

**DISCUSSION**

I. <u>Legal Standard</u>

As noted, the scheduling order set an August 30, 2024 deadline for providing Invalidity Contentions but also specified that Invalidity Contentions may be amended "upon a timely showing of good cause" and identified, as one example of a circumstance that may qualify as good cause, "recent discovery of material, prior art despite earlier diligent search." (Doc. 33 at 6.)

A motion to modify the deadlines set forth in the scheduling order is governed by Rule 16(b)(4)'s "good cause" standard. *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607-08 (9th Cir. 1992). This "standard primarily considers the diligence of the party seeking the amendment." *Id.* at 609. "Although the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification." *Id.* "If that party was not diligent, the inquiry should end." *Id.*

---

[1] Champion's request for oral argument is denied because the issues are fully briefed and argument would not aid the decisional process. *See* LRCiv 7.2(f).

- 4 -

Courts in the Northern District of California have further elaborated on how this standard applies when, as here, a litigant seeks to extend the deadline in a scheduling order for providing invalidity contentions in a patent infringement action. Those decisions are instructive here because the scheduling order in this case is based in significant part on the Northern District of California's model scheduling order for patent infringement actions. (Doc. 47 at 5.) As those courts have explained, "[t]he moving party has the burden of demonstrating good cause. . . . [T]he good cause inquiry is two-fold, asking: (1) whether the moving party was diligent in amending its contentions; and (2) whether the non-moving party would suffer prejudice if the motion to amend were granted." *Karl Storz Endoscopy-Am., Inc. v. Stryker Corp.*, 2016 WL 2855260, *3 (N.D. Cal. 2016). "Diligence is the critical issue in the good cause determination. The diligence required for a showing of good cause has two subparts: (1) diligence in discovering the basis for amendment; and (2) diligence in seeking amendment once the basis for amendment has been discovered. The party seeking to amend its contentions bears the burden of establishing diligence." *Id.* "Prejudice is typically found when amending contentions stand to disrupt the case schedule or other court orders." *Id.*

II.     The Parties' Arguments

Firman argues that "[l]eave to amend should be granted because this motion presents the textbook example of good cause to amend that the Case Management Order allows for: a party recently locating material prior art, despite having conducted a prior diligent search. Firman has narrowly tailored its proposed amendment to address four newly discovered prior art references produced by a nonparty after Firman served its preliminary invalidity contentions. Firman's discovery of those references came after having conducted nine months of prior art searching that leveraged internal resources, expert witnesses, outside counsel, and one of the nation's leading prior art search firms. Firman provided Champion notice of this proposed amendment before any deadline following service of its original invalidity contentions, preventing any possibility of prejudice to Champion. Because Champion will suffer no undue prejudice and Firman has

1  made a timely showing of good cause, this motion should be granted." (Doc. 115 at 2.)

2  Champion opposes Firman's request. (Doc. 120.) First, Champion argues that
3  Firman has failed to establish diligence. (*Id.* at 2-9.) Champion's primary argument is that
4  because Montgomery, Firman's CEO, was cc'd on the April 2015 email discussing two of
5  the new prior art references at issue, "he obviously had actual knowledge of [them] . . .
6  many years before Firman's initial infringement contentions were served, [and] waiting
7  until now to disclose them is the direct opposite of diligence." (*Id.* at 2-6.) Next, Champion
8  argues that Firman's efforts to subpoena Generac also demonstrate an absence of diligence,
9  because Firman waited until August 2024 to issue the first subpoena even though Firman
10 should have known, both via Montgomery and based on Generac's status in the industry,
11 that Generac may have relevant information. (*Id.* at 6-7.) Next, Champion argues that
12 Firman's representations concerning its prior art search are too vague to establish diligence
13 because "Firman's only Declaration, submitted by counsel, is replete with secondhand
14 assertions and omits any relevant details about [the] search." (*Id.* at 7-8.) In a related vein,
15 Champion argues that "[a]s to the Holzapfel (1933) and Miyahita (1999) patent document
16 references," "Firman's Motion and Declaration do not explain how or when Firman found
17 those two references, which would be fundamental to any inquiry about whether such
18 discovery was pursuant to a diligent search." (*Id.* at 8.) Next, Champion argues that Firman
19 has not established diligence with respect to the concepts of "on sale" or "offer for sale"
20 prior art because those concepts are not mentioned anywhere in the cross-referenced emails
21 or even in the proposed Invalidity Contentions. (*Id.* at 8-9.) Finally, apart from the issue
22 of diligence, Champion argues that Firman's amendment request should also be denied
23 because (1) "Firman fails to show that the four references are material and prior art"; (2)
24 Firman's proposed amended Invalidity Contentions "fail[] to comply" with the scheduling
25 order's substantive requirements; and (3) Champion will suffer prejudice if the amendment
26 request is allowed because "Firman's inability to provide actual contentions regarding
27 claim scope in connection with these new references means that the carefully designed
28 claim construction deadlines will need to be delayed" and "if these new devices are added

to the case, there is no doubt that the case schedule will need to be reset, to permit a fair opportunity for Champion to try to understand and have a fair chance to do further discovery and develop a factual record to rebut the new, vague contentions." (*Id.* at 9-14, capitalization omitted.)

In reply, Firman first addresses the issue of diligence, arguing that (1) the scope of its initial Invalidity Contentions (which "identified over 100 prior art references, charting thirty-nine of them against all 131 claims asserted by Champion") "alone" shows that its prior art search was diligent; (2) the timing of its initial August 8, 2024 subpoena to Generac does not establish a lack of diligence, both because the subpoena provided sufficient time to obtain compliance before the August 30, 2024 disclosure deadline and because Generac's insistence on a protective order means an earlier issuance date would not have resulted in earlier compliance; (3) Montgomery's status as a recipient of the April 2015 email is a red herring because Montgomery did not have access to the email after he left Generac in mid-2015, because "diligence does not require a photographic memory," and because the email lacks the technical information required to create invalidity charts; and (4) Firman provided a sufficient level of detail regarding its prior art search in counsel's declaration. (Doc. 122 at 1-7.) As for its alleged failure to explain why it wasn't able to initially identify the Holzapfel and Miyashita prior art, Firman argues that "establishing why a search did not locate something is the impossible task of proving a negative. Courts do not require this." (*Id.* at 9-10.) Finally, Firman contends that Champion's remaining arguments constitute improper attempts to "prematurely litigate the merits of Firman's contentions" and that a party need not establish an entitlement to relief on proposed new claims in order to establish good cause for leave to amend. (*Id.* at 7-9, 10-11.)

III.   Analysis

The parties' main dispute is over whether Firman conducted an "earlier diligent search" for prior art. The Court easily concludes that Firman has met its burden of establishing diligence.[2] As an initial matter, the voluminous nature of Firman's initial

---

[2] Although "[t]he diligence required for a showing of good cause has two subparts: (1) diligence in discovering the basis for amendment; and (2) diligence in seeking

- 7 -

Invalidity Contentions is alone strong evidence that Firman acted with diligence. *See, e.g., Illumina Inc. v. BGI Genomics Co.*, 2021 WL 1022865, *3 (N.D. Cal. 2021) ("BGI's . . . detailed initial invalidity contentions are evidence that BGI conducted a reasonably diligent search for prior art at the outset of this case and before preparing its initial invalidity contentions."); *Karl Storz*, 2016 WL 2855260 at *4 ("Stryker's initial invalidity contentions themselves belie a finding that its search was not diligent: they included over 500 prior art references among the 31 claim charts and 400 additional pages of analysis addressing KSEA's claims. It strains credulity to imagine that Stryker was not diligent in uncovering and evaluating this many references.").

The declaration from Firman's counsel describing Firman's search for prior art provides further support for a finding of diligence. If hiring an industry expert to conduct eight weeks of independent searching, separately hiring one of the nation's leading intellectual property services firms to perform its most extensive and detailed level of service (which included assigning a team of professional searchers and a research librarian to spend three to four weeks conducting searches), and tasking in-house patent attorneys and patent agents to supervise and supplement all of that work is insufficient to establish diligence, it is hard to understand what could possibly qualify. The declaration from Firman's counsel also described these searches with a sufficient degree of specificity and did not need to include the sorts of additional details that Champion contends were required.

Nor do Champion's specific criticisms of Firman's search process undermine the diligent nature of that process. For example, although Champion criticizes the timing of Firman's subpoena to Generac, that timing had nothing to do with Firman's inability to obtain compliance before the August 30, 2024 deadline for serving Invalidity

---

amendment once the basis for amendment has been discovered," *Karl Storz*, 2016 WL 2855260 at *3, the Court only construes Champion's response as challenging the sufficiency of Firman's showing as to the first subpart. At any rate, Firman has also established diligence as to the second subpart—upon discovering the four additional pieces of prior art at issue, Firman quickly notified Champion of its intent to amend, then quickly prepared its proposed amended Invalidity Contentions and provided them to Champion, and then quickly sought judicial relief.

1  Contentions—the ultimate hang-up was the lack of a protective order, which the parties
2  didn't agree to until late October 2024.  (Docs. 94, 95.)  Nor was Firman required to
3  specifically explain, in its motion papers, why it was unable to identify the Holzapfel and
4  Miyashita prior art before the August 30, 2024 deadline.  *Network Protection Sciences,*
5  *LLC v. Fortinet, Inc.*, 2013 WL 1949051, \*2 (N.D. Cal. 2013) ("Unsuccessful prior art
6  searches, standing alone, do not demonstrate an absence of diligence.").  As Firman
7  correctly notes, "[t]he standard is proving a diligent search, not proving why that search
8  did not discover something." (Doc. 122 at 9.)

9  Finally, Montgomery's status as a recipient of the April 2015 email does not
10 establish a lack of diligence.  Of course, it is easy in hindsight to fault Montgomery for not
11 remembering that email and bringing it to Firman's attention before the August 30, 2024
12 deadline for serving Invalidity Contentions.  But "[t]he good cause requirement does not
13 require perfect diligence.  Although hindsight is often '20/20,' identifying and evaluating
14 prior art can be difficult, and new information learned in discovery can lead a party to
15 understandably reevaluate evidence found earlier." *Fujifilm Corp. v. Motorola Mobility*
16 *LLC*, 2014 WL 491745, \*4 (N.D. Cal. 2014).  It is perfectly understandable that
17 Montgomery would not have grasped the significance of (or even recalled) an email on
18 which he was merely cc'd, while working for a different employer, nearly a decade earlier,
19 and his failure to do so is particularly inconsequential in light of the affirmative showing
20 that Firman has made as to the robust, diligent nature of its search.

21 The remaining question is whether Champion would suffer undue prejudice if the
22 motion to amend were granted.  The Court agrees with Firman that no cognizable form of
23 prejudice would arise here.  Most of Champion's prejudice-related arguments turn, in one
24 way or another, on the notion that Firman's proposed amended Invalidity Contentions will
25 fail on the merits or are otherwise substantively flawed in some respect.  But "[d]istrict
26 courts do not consider the sufficiency of the evidence supporting the proposed new theories
27 of invalidity" when evaluating whether good cause exists to allow amendment.
28 *Echologics, LLC v. Orbis Intelligent Sys.*, 2022 WL 17724142, \*9 (S.D. Cal. 2022).  *See*

*also Karl Storz*, 2016 WL 2855260 at *9 ("KSEA might believe that Stryker has no chance of prevailing on its arguments, but that does not bar amendment."). Meanwhile, although allowing amendment may require the case schedule to be changed in some respects, courts have declined to find undue prejudice where, as here, the amendment request does not come too late in the case schedule. *See, e.g., Fujifilm Corp.*, 2014 WL 491745 at *6 ("[T]his case is in the early stages of litigation, and any tax on Fujifilm's resources is outweighed by Motorola's right to develop new information in discovery, as well as the interest in considering material information to secure the just resolution of this action. More than six months remain until the end of fact discovery, more than eight months remain until initial and rebuttal expert reports are due, and more than 10 months remain until the close of expert discovery. Trial is over a year away. Accordingly, the Patent Local Rules' concern with parties sandbagging opponents late in the discovery period is not at issue.") (cleaned up). *Cf. Apple Inc. v. Samsung Electronics Co., Ltd.*, 2012 WL 5632618, *6 (N.D. Cal. 2012) ("[W]ith ample time left on the pretrial clock, Samsung should be able to pursue any additional art without any undue prejudice. Under these circumstances, this Apple amendment is reasonable."). It is also significant that Champion was provided with Firman's proposed amended Invalidity Contentions over two months ago, in early December 2024. *Illumina Inc.*, 2021 WL 1022865 at *5 ("Although these changes likely will result in new obviousness combinations and claim charts, Illumina has not presented a clear case of prejudice as a result. Illumina notes that the close of fact discovery is imminently approaching. This is true, but Illumina has been aware of the [proposed new] reference since early December, when BGI first filed its motion for leave to amend . . . . [T]he added reference will likely be addressed, primarily, during the expert discovery process, which has not yet begun. Although the proposed amendment will likely require the parties, and Illumina, to address additional issues, Illumina has failed to establish that it would be unduly prejudiced as a result.").

…

…

- 10 -

Accordingly,

**IT IS ORDERED** that Firman's motion to amend invalidity contentions (Doc. 115) is **granted**.

Dated this 28th day of February, 2025.

Dominic W. Lanza
United States District Judge