**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Champion Power Equipment Incorporated, | No. CV-23-02371-PHX-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| Firman Power Equipment Incorporated, | |
| Defendant. | |

On February 28, 2025, the Court issued an order granting Firman's motion to amend its invalidity contentions. (Doc. 124.) Champion has, in turn, filed a motion for reconsideration of that order (Doc. 133) and Firman has filed a response (Doc. 138). For the reasons that follow, the motion is denied.

## LEGAL STANDARD

"The Court will ordinarily deny a motion for reconsideration of an Order absent a showing of manifest error or a showing of new facts or legal authority that could not have been brought to its attention earlier with reasonable diligence." LRCiv. 7.2(g)(1). Reconsideration is an "extraordinary remedy" that is available only in "highly unusual circumstances." *Kona Enters., Inc. v. Est. of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000) (internal quotation marks omitted). "Motions for reconsideration are disfavored . . . and are not the place for parties to make new arguments not raised in their original briefs. Nor is reconsideration to be used to ask the Court to rethink what it has already thought." *Motorola, Inc. v. J.B. Rodgers Mechanical Contractors*, 215 F.R.D. 581, 582 (D. Ariz.

2003).  *See also FTC v. Noland*, 2022 WL 901386, *3 (D. Ariz. 2022) ("Local Rule 7.2(g) . . . [creates] essentially the same standard a district court outside the District of Arizona . . . would apply when resolving a reconsideration motion under Rule 54(b).") (citations omitted); 2 Gensler, Federal Rules of Civil Procedure, Rules and Commentary, Rule 54 (2022) ("Rule 54(b) is not a mechanism to get a 'do over' to try different arguments or present additional evidence when the first attempt failed.  Thus, while the limits governing reconsideration of final judgments under Rule 59(e) do not strictly apply, courts frequently invoke them as common-sense guideposts when parties seek reconsideration of an interlocutory ruling under Rule 54(b).  In sum, trial courts will exercise their discretion to reconsider interlocutory rulings only when there is a good reason to do so, including (but not limited to) the existence of newly-discovered evidence that was not previously available, an intervening change in the controlling law, or a clear error rendering the initial decision manifestly unjust.").

## DISCUSSION

The key disputed issue in the February 28, 2025 order was whether Firman had conducted an "earlier diligent search" for prior art.  (Doc. 124 at 7-10.)  The Court "easily conclude[d] that Firman . . . met its burden of establishing diligence" because (1) the voluminous nature of Firman's initial Invalidity Contentions was "alone strong evidence that Firman acted with diligence"; (2) Firman's evidentiary submissions regarding the scope of its search "provide[d] further support for a finding of diligence"; and (3) although Champion "criticize[d] the timing of Firman's subpoena to Generac, that timing had nothing to do with Firman's inability to obtain compliance before the August 30, 2024 deadline for serving Invalidity Contentions [because] the ultimate hang-up was the lack of a protective order, which the parties didn't agree to until late October 2024."  (*Id.* at 7-9.)  Additionally, although Firman's current CEO and president, Greg Montgomery ("Montgomery"), was cc'd on a 2015 email that Firman obtained via its subpoena to Generac (and which formed part of the basis for Firman's amendment request), the Court concluded that "Montgomery's status as a recipient of the April 2015 email does not

establish a lack of diligence" because, *inter alia*, "[i]t is perfectly understandable that Montgomery would not have grasped the significance of (or even recalled) an email on which he was merely cc'd, while working for a different employer, nearly a decade earlier." (*Id.* at 9.)

In its reconsideration request, Champion focuses on Montgomery's role while working for Generac. (Doc. 133.) In a nutshell, Champion argues that "recently produced documents" show that Montgomery had "extensive involvement with Generac's multi-fuel generator development," which in turn shows that Firman should have "immediately serve[d] Generac with a subpoena" and that Firman "made misleading statements" in its earlier motion papers. (*Id.* at 1, 6-7.) Champion not only seeks reversal of the February 28, 2025 order but asks the Court "to also issue an order to show cause as to why Firman should not be held in contempt." (*Id.* at 8.) Firman opposes the reconsideration request on an array of grounds. (Doc. 138.)

The Court agrees with Firman that reconsideration is not warranted here. Even assuming the new documents on which Champion relies—which, it should be noted, were available to Champion at the time it filed its response to the motion for leave to amend—show that Montgomery had a more extensive role in Generac's circa-2015 development of multi-fuel generator products than Firman previously intimated, this at most shows that Firman did not need to wait until early August 2024 (following the conclusion of its outside search team's search efforts) before issuing a subpoena to Generac for relevant documents and instead could have relied on Montgomery's independent recollection of his earlier work at Generac to accelerate the timing of its issuance of the Generac subpoena. But even if the subpoena could or should have been issued sooner, it is undisputed that Firman needed to wait to obtain compliance from Generac before it could attempt to base its Invalidity Contentions on the documents in Generac's possession. And as the February 28, 2025 order expressly found, the "timing [of the subpoena] had nothing to do with Firman's inability to obtain compliance before the August 30, 2024 deadline . . . [because] the ultimate hang-up was the lack of a protective order, which the parties didn't agree to until

late October 2024." (Doc. 124 at 8-9.) Champion's only fleeting attempt to address the compliance issue is to assert in a footnote that "[t]he issuance of a formal Protective Order is a red herring because the Parties agreed on June 5, 2024, to produce confidential and AEO documents" (Doc. 133 at 2 n.1), but as Firman correctly notes in its response, "Champion and Firman's agreement as to how and when to exchange their own documents ahead of a protective order did not include or extend to Generac—a nonparty and direct competitor of both Parties. Champion presents no explanation as to why Generac would have been bound by the parties' agreement." (Doc. 138 at 5.)[1]

Although the analysis could end there, the Court also notes that Montgomery's independent knowledge (or lack thereof) of the Generac documents formed only a small component of the diligence analysis set forth in the February 28, 2025 order. The finding of diligence was largely based on the voluminous nature of Firman's initial Invalidity Contentions and the evidence that Firman submitted to establish the extensive nature of its search process. (Doc. 124 at 7-9.) Indeed, the Court expressly noted that Montgomery's professed failure to recall the Generac documents was "*particularly inconsequential* in light of the affirmative showing that Firman has made as to the robust, diligent nature of its search." (*Id.* at 9, emphasis added.) Thus, Champion's new arguments and documents bearing on this "particularly inconsequential" point do not alter the bottom-line conclusion that Firman acted with diligence.

Accordingly,

**IT IS ORDERED** that Champion's motion for reconsideration (Doc. 133) is **denied**.

Dated this 31st day of March, 2025.

Dominic W. Lanza
United States District Judge

---

[1] Firman also correctly notes that Champion "does not explain . . . why this argument could not have been made earlier with reasonable diligence in its response to" Firman's motion to amend. (Doc. 138 at 4.)

- 4 -