**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

Champion Power Equipment Incorporated,
Plaintiff,
v.
Firman Power Equipment Incorporated,
Defendant.

No. CV-23-02371-PHX-DWL

**ORDER**

This is a patent infringement action between two direct competitors, Champion Power Equipment Incorporated ("Champion") and Firman Power Equipment Incorporated ("Firman"). Now pending before the Court is Firman's motion to compel compliant amended infringement contentions. (Doc. 288.) For the reasons that follow, the motion is denied.

**RELEVANT BACKGROUND**

On November 10, 2023, Champion initiated this action. (Doc. 1.)

On March 29, 2024, Champion filed an amended complaint asserting that Firman infringed 13 of its patents for multi-fuel generators ("the Asserted Patents"). (Doc. 24.)

On April 24, 2024, the Court issued the case management order ("CMO"). (Doc. 33.) "Because this case includes a claim of patent infringement," the CMO "require[d] the parties to provide certain patent-specific disclosures and abide by certain patent-specific deadlines." (*Id.* ¶ 5.) Paragraph 5 of the CMO sets forth the procedure for "a party claiming patent infringement" to serve a "Disclosure of Asserted Claims and Infringement

Contentions" and details what information those infringement contentions must contain. (*Id.* ¶ 5(A)(1)-(8).) Paragraph 5 also explains that amendment of contentions "may be made only by order of the Court upon a timely showing of good cause." (*Id.* ¶ 5(C).) The CMO also sets forth a procedure for claim construction. (*Id.* ¶ 5(D)-(J).)

On June 21, 2024, Champion "served its [Initial] Infringement Contentions, asserting 130 claims" ("Initial Infringement Contentions"). (Doc. 288-1 at 2 ¶ 2. *See also id.* at 4-142 [excerpts of Champion's Initial Infringement Contentions].)

On June 10, 2026, after full briefing (Docs. 155, 171, 175), various post-briefing stipulations (Docs. 261, 265), a tentative order (Doc. 267), and a *Markman* hearing (Doc. 270), the Court issued an order construing the disputed terms and phrases in the Asserted Patents ("the Claim Construction Order"). (Doc. 280.)

As relevant here, the Claim Construction Order construed the term "selector switch" as "a movable part that enables access to selection of either the first fuel source or the second fuel source and prevents selection of both fuel sources at the same time." (*Id.* at 36.) The Court specifically explained that "the selector switch is *never* described—in the patent specification or the claims—as itself performing the fuel selection. Rather, it is consistently described as permitting or enabling selection of one fuel source by preventing or inhibiting selection of the other fuel source." (*Id.* at 30.) The Court also emphasized that "the selector switch permits *access to* selection of a fuel source but does not itself perform the selection." (*Id.* at 31.)

Additionally, the Court construed the term "selectively control" as "mechanically permit or prevent fuel flow . . . ." (*Id.* at 87-88.) The Court explained that "every time 'selectively control' is used in the claims, the 'mechanical fuel valve' is described as 'selectively controlling.'" (*Id.* at 83.) The Court accepted Firman's proposal to include the adverb "mechanically" before the phrase "permit or prevent fuel flow" "to clarify that it is the mechanical fuel valve performing the selective control of fuel flow, and not the mechanical fuel valve indirectly impacting fuel flow by triggering an electrical valve which itself performs the selective controlling of fuel flow." (*Id.* at 85.) The Court emphasized

that "the claims and the specification are unequivocal that the mechanical fuel valve is what selectively controls fuel flow" and that "[n]owhere do the patents suggest that the mechanical fuel valve triggers some other electrical valve which itself performs the selective control of fuel flow." (*Id.* at 85-86.)

On June 16, 2026, "the parties agreed that Champion would provide its proposed amended disclosure of asserted claims and infringement contentions . . . applying the Court's claim constructions, after which Firman would provide its proposed responsive patent contentions." (Doc. 284 ¶ 2.)

On June 26, 2026, "Champion provided Firman its proposed amended infringement contentions." (*Id.* ¶ 3.)

On July 10, 2026, the parties filed a "Stipulation and Joint Motion re Amended Infringement Contentions." (*See generally id.*) In the stipulation, Firman did not oppose Champion's request to amend its infringement contentions for good cause based on the Claim Construction Order. (*Id.* ¶ 3.) The stipulation further explained that "[t]he parties now disagree whether Champion's proposed amendments apply the Court's claim constructions"; that "Firman provided Champion its portion of a joint discovery dispute statement seeking to compel amended infringement contentions that apply to the Court's claim constructions"; and that "Champion objected to the use of the discovery dispute statement, arguing that the issue is not a discovery dispute and should instead be resolved via ordinary motion practice." (*Id.* ¶ 4.) The stipulation requested: "(1) That Champion be granted leave to amend its infringement contentions as proposed, without Firman agreeing such amendments comply with the Court's claim constructions"; (2) "That Firman be granted leave to file a motion to compel compliant amendments seven (7) days from entry of this stipulation, without Champion agreeing this dispute is properly characterized as a discovery dispute"; (3) "That Firman serve its proposed responsive noninfringement, unenforceability, and invalidity contentions 14 days after either (i) Champion serves updated amended infringement contentions (for which the parties agree there would be good cause) following the Court's resolution of Firman's motion to compel, or (ii) the

Court holds no such updates are required"; and (4) "That fact discovery shall close 90 days after the Court rules on Firman's motion to compel." (*Id.* ¶ 6.)

On July 13, 2026, the Court granted the stipulation. (Doc. 285.)

On July 15, 2026, Champion served its amended infringement contentions ("Amended Infringement Contentions"). (Doc. 288-1 at 2 ¶ 5. *See also id.* at 143-287 [excerpts of Champion's Amended Infringement Contentions].)

On July 20, 2026, Firman filed the pending motion to compel amended infringement contentions. (Doc. 288.) The motion is now fully briefed. (Docs. 292, 295, 305 [surreply].)[1]

**DISCUSSION**

I. <u>The Parties' Arguments</u>

Firman argues that "[t]he Court should compel Champion to amend its infringement contentions so that they comply with the Court's Claim Construction Order because its position on 88 of the 125 remaining claims ignores and distorts that order." (Doc. 288 at 2.) Specifically, Firman argues that "[e]ach of those 88 claims contain one of two claim terms the Court construed: 'selector switch' and 'selectively control,'" "[t]he Claim Construction Order squarely rejected the interpretation of those two terms that Champion's [I]nitial [I]nfringement [C]ontentions applied," yet Champion's Amended Infringement Contentions continue to "maintain the positions the Court rejected." (*Id.*) As for the term "selector switch," Firman emphasizes that the Claim Construction Order "conclude[d] that the selector switch is *never* described—in the patent specification or the claims—as itself performing the fuel selection" and held that "[t]o the extent Champion is attempting to argue that . . . the selector switch is itself performing the fuel selection . . . , that argument is without merit." (*Id.* at 4, citing Doc. 280 at 30-31.) Firman argues that Champion's Amended Infringement Contentions "continue to map 'selector switch' to Firman's rotatable dial," and although "Champion deleted the sentence [from its Initial Infringement

[1] The parties' requests for oral argument are denied because the issues are fully briefed and argument would not aid the decisional process. *See* LRCiv 7.2(f).

Contentions] admitting that what it accuses as the selector switch 'controls which fuel source is selected,'" Champion "did not alter its admission for *how* the accused switch functions." (*Id.* at 5.) In a nutshell, Firman argues that Champion's Amended Infringement Contentions fail to accurately apply the Court's claim constructions because those contentions accuse Firman's rotatable dial of infringing Champion's "selector switch," even though Champion purportedly admits that Firman's rotatable dial itself performs the fuel selection. (*Id.* *See also id.* at 9 ["[Champion's] amendments still maintain a mapping to a component that itself performs the selection. Champion's contentions therefore fail to apply the Court's construction. By Champion's own admission, Firman's rotatable dial itself selects the fuel, and thus cannot satisfy the Court's construction."].) Additionally, Firman asserts that Champion's Amended Infringement Contentions now contend that fuel selection "does not occur until 'the dual fuel generator starts and fuel begins to flow to the engine'" and argues that this contention "is disingenuous" and "renders the [C]ourt's construction a nullity because in any generator, fuel is inherently not flowing when the engine is off." (*Id.* at 10.) As for the term "selectively control," Firman emphasizes that the Claim Construction Order held "that *what* 'selectively controls fuel flow' is the 'mechanical fuel valve'" and further held "that it is the mechanical fuel valve performing the selective control of fuel flow, and not the mechanical fuel valve indirectly impacting fuel flow by triggering an electrical valve which itself performs the selective controlling of fuel flow.'" (*Id.* at 7, quoting Doc. 280 at 84-85.) Firman argues that "Champion's Amended Infringement Contentions continue to argue the mechanical fuel valve selectively controls the LPG fuel because when the rotatable dial rotates the mechanical fuel valve, a tab on the dial also triggers a switch that electronically activates a solenoid to control the LPG fuel flow," and that "Champion made just one change: it added the phase [sic] 'a mechanical portion' when describing the functionality of the electronic LPG solenoid," "[s]uch that the contentions now state that a '*mechanical portion* of the LPG solenoid [opens] and allow[s] LPG to flow.'" (*Id.* at 8, citation omitted.) In a nutshell, Firman argues that Champion's Amended Infringement Contentions fail to accurately

apply the Court's claim constructions because those contentions rely on an infringement theory based on a *solenoid* valve (as opposed to a *mechanical* valve) selectively controlling fuel flow—and that Champion tries to end run the Claim Construction Order by arguing that it is a "mechanical portion" of that solenoid valve that does the selective controlling. (*Id.* *See also id.* at 10-11, citations omitted ["[Champion's] amendments still map the term to an electric valve (i.e., an LPG solenoid valve) that performs the selective control, when triggered by electrical switches on the rotatable dial . . . [and] Champion's sole amendment simply states what is inherent in an electronic valve's operations—that a mechanical portion moves in response to the electric signal . . . [b]ut this does not change the fact that the electronic LPG solenoid valve is not the mechanical gasoline valve Champion identifies as controlling the gasoline fuel source."].) Firman argues that "[a]s the patentee, Champion has an obligation to continually assess the soundness of pending infringement claims, especially after an adverse claim construction and must withdraw baseless infringement claims precluded by the claim construction rulings," but "Champion continues to maintain the same infringement positions as if the adverse claim construction did not occur." (*Id.* at 9, cleaned up.) Firman argues that "[c]ourts routinely award fees against patentees that continue down this path of ignoring claim construction orders and unnecessarily prolonging or maintaining an expanded scope of the lawsuit by persisting with baseless infringement positions," and "[a]lthough Section 285 of the Patent Act permits Firman to recover fees at the end of this lawsuit, the Patent Act does not require Firman to stand by idly while fees needlessly multiple." (*Id.* at 11-12.) Firman argues that "[b]ecause Champion's infringement contentions inform the scope of remaining fact and expert discovery, Champion's pursuit of infringement contentions that have become objectively baseless following the Claim Construction Order improperly denies Firman and the Court the intended benefits of the Markman process in streamlining litigation and narrowing issues for trial," and "[f]orcing the parties to litigate more than three times the number of claims truly in dispute wastes party and judicial resources." (*Id.* at 12.)

In response, Champion argues that Firman's motion "is procedurally inappropriate

and substantively untenable." (Doc. 292 at 1.) Champion argues that Firman's "Motion asks the Court, without citing any case, statute, or other authority, to 'compel compliance' with the Court's Claim Construction Order." (*Id.*) Champion emphasizes that it "amended its infringement contentions to address the" Claim Construction Order, and although "Firman may disagree that its products infringe Champion's patents, . . . that disagreement is a question for the fact finder to resolve on a full record that includes expert testimony." (*Id.* at 1-2.) As for the term "selectively control," Champion argues that its Amended Infringement Contentions "specifically addressed the Court's construction of 'selectively control' to address the 'mechanically' adverb" because it added the phrase "a mechanical portion of" throughout its claims to "clarify that the different valves 'mechanically permit or prevent fuel flow,' consistent with the [Claim Construction] Order." (*Id.* at 3-4.) As for the term "selector switch," Champion argues that its "amendments are also consistent with the Court's construction of" this term, and Champion argues that it added the following phrase to address the "enables" portion of the Court's construction: "To avoid any uncertainty, the claims do not require fuel to be actually flowing to the engine; the claims, as construed by the Court, merely require that the selector switch 'enable access to a selection of one of the first fuel flow and the second fuel flow.'" (*Id.* at 5-6, citation omitted.) Next, Champion argues that Firman's motion is procedurally improper because it "does not identify any authority under which the Motion is brought. There is no reference to Rule 37. There is no reference to Rule 26. There is no reference to Rule 11. And there is certainly no reference to Rule 56." (*Id.* at 6.) Champion argues that "[t]his leaves [it] to speculate as to any basis or authority Firman believes the Court has to grant Firman's relief, and therefore Champion must guess at what standard of review or legal analysis should apply" and that "[t]he Court should deny Firman's motion outright for this reason." (*Id.*) Champion argues that "Firman's factual disagreement with Champion's amended infringement contentions . . . does not make them baseless," and "[m]oreover, this case is *not* at the procedural posture at which the Court would be making any 'exceptional' case determination . . . for an award of attorneys' fees under 35 U.S.C. § 285." (*Id.*) Champion

argues that § 285 applies when there is a "prevailing party" and "after a *substantive* resolution of the case," "[b]ut this case is nowhere near consideration of an award of attorneys' fees under § 285 because this case has not been decided on the merits," and "Firman provides no authority authorizing the Court to consider the sufficiency of Champion's infringement contentions under 35 U.S.C. § 285 based on an eventual claim for attorneys' fees Firman might make at the end of the case." (*Id.* at 7.) Next, Champion argues that the caselaw cited by Firman "does not match the procedural posture of this case." (*Id.*, cleaned up.) Champion also argues that "Firman's present dispute concerns whether Firman's accused products *infringe* under the theories painstakingly disclosed in Champion's [A]mended [I]nfringement [C]ontentions" and that "Firman's argument is simply that Champion's theory of *how* Firman's products infringe the patents is incorrect and therefore meritless, which is a disputed issue of fact inappropriate for resolution on a procedurally unclear motion to compel." (*Id.* at 8.) Champion argues that, "[i]ndeed, how Firman's products work is an issue of fact and expert testimony not amenable to resolution at this stage of the case" because "[f]act discovery has not concluded," "[e]xpert discovery has not concluded," and "[n]o expert reports have been produced." (*Id.*) Champion argues that "[i]t would be error for the Court to review Champion's [A]mended [I]nfringement [C]ontentions (which are not evidence) to determine whether Firman's product infringe," "[y]et that is exactly what Firman is asking the Court to do: order Champion to dismiss certain patent claims because Firman believes there is no possible way for Firman to infringe those claims." (*Id.* at 8-9.) Champion argues that "Firman is attempting to achieve summary judgment without meeting its burden to show there is no genuine dispute of material fact . . . [u]nder the guise of a motion regarding the sufficiency of infringement contentions." (*Id.* at 9.) Next, Champion argues that "[t]he substantive basis of Firman's Motion treats Champion's [Initial Infringement Contentions] as substantive binding admissions from which it cannot deviate," but "Champion's [I]nitial [I]nfringement [C]ontentions are not evidentiary admissions and are no longer in effect" because Champion's Amended Infringement Contentions "are now operative." (*Id.* at 10.)

Champion also argues that "Firman's approach to infringement contentions is contrary to law and common sense" because "Champion's infringement contentions contain Champion's *theory* of how Firman's products infringe the patents" but "are not admissible stipulated fact." (*Id.*) Champion argues that "[i]f the Court were to grant Firman's Motion, there would be no foreseeable endpoint to Firman's request" because "Firman will never agree that its products infringe" and "will never agree that Champion's infringement contentions comply with the [Claim Construction] Order." (*Id.* at 12.)

In reply, Firman argues that "[i]t is settled law that, after the Court provides its claim construction rulings, the parties must use that claim construction during the rest of the proceedings and cannot, without seeking reconsideration of the construction, offer theories of infringement or invalidity that effectively seek to contradict the Court's construction." (Doc. 295 at 1, cleaned up.) Firman argues that "Champion does not dispute that, under this established principle, Champion must update its infringement contentions to conform to the Court's Claim Construction Order," and thus, "[t]he only question is whether Champion's [A]mended [I]nfringement [C]ontentions contradict the Court's constructions." (*Id.*) Firman argues that "[t]hey do" because "Champion's current mapping of 88 claims containing the terms 'selector switch' or 'selectively control' still maintain positions that the Court *expressly* rejected." (*Id.*) Firman argues that "[r]ather than address the *substance* of Firman's motion, Champion argues Firman's motion is procedurally inappropriate," but "Champion is wrong." (*Id.*) Firman reiterates that "Champion has an undeniable obligation to amend its infringement contentions to comply with the Court's Claim Construction Order." (*Id.* at 2, cleaned up.) Firman argues that *In re Papst Licensing GmBH & Co. KG Litig.*, 273 F.R.D. 339 (D.D.C. 2011), "is instructive" because, there, "[t]he court . . . ordered the patentee to amend its contentions to conform with the court's claim constructions" but the patentee "served amended infringement contentions that still included (a) renewal of its own claims constructions, already rejected by the [c]ourt; (b) new phrases invented to avoid the requirements of the [c]ourt's orders; and (c) theories based on previously rejected claims constructions." (*Id.* at 2-3, cleaned

up.) Firman argues that the "court issued a stern warning, recognizing the patentee's approach bespeaks a total lack of respect for [c]ourt orders and timely resolution of this case" and that, similarly, "Champion's amended infringement contentions improperly ignore the Court's claim constructions and would defeat the purpose of claims construction and exponentially increase the time and expense this litigation requires." (*Id.* at 3, cleaned up.) Next, Firman argues that "Champion does not meaningfully address (and therefore effectively concedes) Firman's analysis showing Champion's non-compliance with the Claim Construction Order," and instead, Champion "cho[se] to cherry-pick examples of changes it made in attempt to show it did *something* in response to the Claim Construction Order," "[b]ut Champion makes no attempt to explain how its limited changes bring its contentions into compliance with the Court's reasoning." (*Id.*) Firman argues that "[n]otably, Champion does not dispute that it continues to map both 'selector switch' and 'selectively control' to the same elements it accused before the Court construed those terms." (*Id.* at 4.) As for the term "selector switch," Firman reiterates that "Champion continues to map 'selector switch' to a rotatable dial that selects the fuel source." (*Id.*) Firman argues that "Champion's sole argument for compliance is that the claims do not require fuel to be actually flowing to the engine and thus selection does not occur until the engine is started," but this "'starting the engine selects the fuel' theory" is, like in *In re Papst*, "a new phrase, invented by [Champion] to avoid the requirements of the Court's orders." (*Id.* at 4-5, cleaned up.) Firman argues that "[r]elying on a newly invented phrase—that selection does not begin until the engine is started—renders the court's claim construction a nullity and represents an improper attempt to reassert its original contentions filed before claims construction," and like in *In re Papst*, "bespeaks a total lack of respect for Court orders and the timely resolution of this case." (*Id.* at 5, cleaned up.) As for the term "selectively control," Firman notes that "Champion argues it added the words 'mechanically' and 'a mechanical portion of' throughout to address the Court's claim construction," but Firman argues that "[t]hese are meaningless changes given that Champion's Amended Infringement Contentions continue to take the position that the

mechanical fuel valve selectively controls the LPG fuel because when the rotatable dial rotates the mechanical fuel valve, a tab on the dial also triggers a switch that electronically activates a solenoid to control the LPG fuel flow." (*Id.*, cleaned up.) Firman argues that "[t]he Court's claim constructions are 'the law of the case,' and Champion is not allowed to offer theories of infringement that would render those constructions a nullity." (*Id.* at 6.) Firman also argues that "[j]ust as Champion is barred from rearguing claim construction or taking positions inconsistent with the Court's construction, its counsel and experts are likewise precluded from doing the same," and "Champion cannot delay resolution of this dispute on the hope that it can sneak in its preferred construction over the [C]ourt's construction under the guise of expert testimony." (*Id.*) Last, Firman identifies three reasons why Champion's procedural objections lack merit. (*Id.* at 7.) First, Firman argues that its request is "presented through a proper vehicle" because "the parties stipulated to regular motion practice, which the Court granted" and its motion "was presented properly according to the parties' stipulation." (*Id.*) Second, Firman argues that its "motion does not seek premature relief" because it "is not asking the Court to determine whether Firman infringes the patents." (*Id.*) Firman argues that "the Court does not need to determine whether Champion's infringement theories actually cover Firman's accused products" and "need only determine whether Champion's infringement theories are in harmony with the Court's Claim Construction Order." (*Id.*) Firman argues that "[t]he Court can reach the latter issue without determining whether Firman's products infringe." (*Id.*) Firman also clarifies that it "does not seek sanctions or fees at this time, so Champion's discussion of what constitutes an 'exceptional case' under Section 285 is irrelevant for present purposes." (*Id.*) Third, Firman argues that "the Court has inherent authority to enforce its orders, including the [CMO] requiring infringement contentions and the Claim Construction Order precluding certain claim construction positions," and Firman reiterates that it "should not be required to continue to incur time and expense defending against moving-target theories that lack a good faith basis and fail to comply with the Court's orders." (*Id.* at 8.) Firman urges that "[t]he Court should act now and

compel further amended infringement contentions so that discovery, expert reports, dispositive motions, and trial (if needed) proceed on a coherent theory in harmony with the Court's claim constructions." (*Id.*)

In surreply, Champion argues that "Firman's new authorities and arguments, raised for the first time in reply, do not support asking the Court to substantively evaluate Champion's [A]mended [I]nfringement [C]ontentions and compel further revision at this stage" because "[e]ach new case arises from a materially different procedural posture, and none supports the extraordinary relief Firman seeks." (Doc. 305 at 2.) Champion argues that the quotations from *In re Papst* cited in Firman's reply were "taken out of context." (*Id.*) Champion argues that *In re Papst* is distinguishable because it "involved a motion for sanctions for a patentee's 'complete disregard' for the court's claim construction order" and that because *In re Papst* was decided on a "motion for sanctions under Rule 16 and Rule 37," it is "inapplicable to Firman's requested relief" because "Firman's motion is neither brought under Rule 16 nor Rule 37." (*Id.*) Champion also emphasizes that *In re Papst* involved "a violation of that court's Sixth [procedural order] requiring amended contentions with the court-ordered information" and that "Papst failed to include the court-ordered specifics and produced only generic claim charts referencing vague narrative sections." (*Id.*, cleaned up.) Champion argues that its conduct is "[e]ntirely different from Papst" because it "entered into a stipulation—granted by the court—to amend its contentions for the sole purpose of complying with and addressing the Claim Construction Order" and "Firman has not identified conduct approaching Papst's blatant disregard for court orders or showing an effort to prolong litigation." (*Id.* at 3.) Champion argues that Firman's "own Motion acknowledges that Champion amended its contentions to include the Court's claim constructions—the conduct *absent* and admonished in [*In re*] *Papst*." (*Id.*) Next, Champion argues that *B-K Lighting, Inc. v. Vision3 Lighting*, 930 F. Supp. 2d 1102 (C.D. Cal. 2013), cited by Firman "to support its inherent authority argument," "is distinguishable" because that case "involved a motion for summary judgment where the court used its inherent authority, Rule 37(c), and Rule 26(e)(1) to strike portions of *expert*

*testimony* regarding untimely 'new infringement claims,'" whereas here, "no expert testimony is involved, let alone regarding 'new infringement claims' that were disclosed *after* the close of discovery and *without* any amended infringement contentions." (*Id.* at 3-4, citations omitted.) Champion reiterates that "Firman is essentially requesting summary judgment of noninfringement—the procedural posture in *B-K Lighting*—in an unsupported Motion," and "[t]here is no basis for the Court to grant that extraordinary relief at this stage." (*Id.* at 4.) Last, Champion argues that "Firman prematurely (and with no evidence) suggests that Champion intends to 'sneak in its preferred construction of the Court's construction under the guise of expert testimony.'" (*Id.*, quoting Doc. 295 at 7.) Champion argues that none of the cases cited by Firman, however, "supports relief at this pre-expert report stage," "[a]nd a court order cannot be based on a hypothetical future act, because such an order would be an impermissible advisory opinion." (*Id.*) Champion then proceeds to seek to distinguish four cases cited by Firman. (*Id.* at 4-5.)

II. Analysis

A threshold (and ultimately dispositive) problem with Firman's motion is that Firman does not identify any rule of procedure or other source of authority that would authorize the relief it seeks. True, some courts have held that infringement contentions are, in essence, interrogatory responses and have thus suggested that a defendant may (at least under certain circumstances) bring a motion to compel infringement contentions under Rule 37.[2] But Firman does not cite Rule 37 and that the Court is not, at any rate, persuaded

[2] *See, e.g.*, *Star Envirotech, Inc. v. Redline Detection, LLC*, 2014 WL 12593986, *1 (C.D. Cal. 2014) ("[Preliminary infringement contentions] are a 'discovery device' intended to streamline the discovery process by taking the place of a series of interrogatories that defendants would likely have propounded. . . . Defendants argue that Plaintiff's [preliminary infringement contentions] are inadequate, as they fail to provide the necessary support to justify Plaintiff's infringement allegations. These arguments attack the sufficiency of Plaintiff's disclosures, and therefore are more appropriately made in a discovery motion that complies with Local Rule 37.") (cleaned up); *Cal. Inst. of Computer Assisted Surgery, Inc. v. Med-Surgical Servs., Inc.*, 2011 WL 4505239 (N.D. Cal. 2011) (referring to infringement contentions under Patent Local Rule 3-1 as "discovery mechanism[s] that take[] the place of a series of interrogatories that defendants would likely have propounded had the patent local rules not provided for streamlined discovery" and holding that "any motions filed under Patent Local Rule 3-1 are subject to Rule 37") (cleaned up); *Samsung SDI Co., Ltd. v. Matsushita Elec. Indus. Co., Ltd.*, 2006 WL 5097360, *1-2 (C.D. Cal. 2006) ("[Infringement contentions] are essentially a discovery device intended to streamline the discovery process by taking the place of a

that a Rule 37(a) motion to compel would be a proper procedural mechanism for Firman to raise this particular dispute. Under Rule 37(a)(1), "a party may move for an order compelling disclosure or discovery." *Id.* Rule 37(a)(3), in turn, identifies the "specific motions" that may be brought Rule 37(a):

> (3) *Specific Motions.*
>
> (A) *To Compel Disclosure*. If a party fails to make a disclosure required by Rule 26(a), any other party may move to compel disclosure and for appropriate sanctions.
>
> (B) *To Compel a Discovery Response*. A party seeking discovery may move for an order compelling an answer, designation, production, or inspection. This motion may be made if:
>
> (i) a deponent fails to answer a question asked under Rule 30 or 31;
>
> (ii) a corporation or other entity fails to make a designation under Rule 30(b)6) or 31(a)(4);
>
> (iii) a party fails to answer an interrogatory submitted under Rule 33; or
>
> (iv) a party fails to produce documents or fails to respond that inspection will be permitted—or fails to permit inspection—as requested under Rule 34.
>
> (C) *Related to a Deposition*. When taking an oral deposition, the party asking a question may complete or adjourn the examination before moving for an order.

*Id.* Rule 37(a)(4) further explains:

> (4) *Evasive or Incomplete Disclosure, Answer, or Response*. For purposes of this subdivision (a), an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond.

*Id.*

Even assuming that a motion to compel amended infringement contentions is a *de*

---

series of interrogatories that defendants would likely have propounded. . . . If the parties continue to dispute the sufficiency of Plaintiff's [infringement contentions], a discovery motion compelling the disclosure of Plaintiff's specific infringement theory and evidence in support thereof, should be filed with the United States Magistrate Judge assigned to this case.") (cleaned up).

*facto* motion to compel an interrogatory response, such a motion can only be brought under Rule 37 when "a party fails to answer," *see* Fed. R. Civ. P. 37(a)(3)(B)(iii), or when a party provides an "evasive or incomplete . . . response," *see* Fed. R. Civ. P. 37(a)(4). But Firman does not argue that Champion failed to provide infringement contentions (or failed to provide amended infringement contentions following the Claim Construction Order). Nor does Firman argue that Champion's Amended Infringement Contentions are "evasive or incomplete." Instead, Firman simply disagrees that Champion's Amended Infringement Contentions correctly apply the Court's claim constructions. Under the plain language of Rule 37(a), that is not a basis for moving to compel.

In *Perfect Surgical Techniques, Inc. v. Olympus Am., Inc.*, 2014 WL 1095591 (N.D. Cal. 2014), the plaintiff brought a patent infringement action and served initial infringement contentions. *Id.* at *1. After the defendants "point[ed] out a number of deficiencies in the contentions, . . . plaintiff served supplemental contentions." *Id.* The defendants "believed that the supplemental contentions contained many of the same deficiencies as the original contentions, and requested further supplementation." *Id.* After the plaintiff refused to supplement again, the defendants filed a motion to strike, or in the alternative, to compel amended contentions. *Id.* at *1, 3. At the hearing on this motion, the court concluded that the "plaintiff had not met the standard of Local Rule 3-1" and "granted the motion to strike with leave to amend." *Id.* at *1.[3] Thereafter, the plaintiff "served its supplemental infringement contentions" and defendants contended "that the supplemental contentions were still inadequate." *Id.* at *2. After the plaintiff declined to amend again, the defendant filed a second motion to strike. *Id.* The court "granted defendants' motion to strike without further leave to amend" as to three products and with leave to amend as to one product. *Id.* Thereafter, the defendants moved for "fees/costs on two different grounds: first, based on Federal Rule of Civil Procedure 37(a)(5)(A), and second, based on Rule 37(b)(2)(C)." *Id.*

In addressing this motion, the court explained that Rule 37(a)(5)(A) applies when a

[3] Firman has not moved to strike Champion's Amended Infringement Contentions.

motion compelling discovery is granted, whereas Rule 37(b)(2)(C) applies when a party fails to comply with a court order. *Id.* at *3. As for the former provision, the court noted "that Rule 37(a)(3) sets forth a number of specific instances in which a party may move for an order compelling disclosure or discovery" and "that failure to provide adequate infringement contentions is not specifically mentioned within Rule 37." *Id.* The defendants "seemingly concede[d] that failure to provide adequate infringement contentions is not specifically mentioned within Rule 37, but they [nevertheless] argue[d] that Patent Local Rule 3-1[4] is equivalent to a discovery device, and thus, any motion filed under Patent Local Rule 3-1 is subject to Rule 37." *Id.* (cleaned up). The defendants "further argue[d] that Rule 37 does not provide an exhaustive list of motions subject to the Rule." *Id.* "The court decline[d] to adopt the approach advocated by defendants with respect to Rule 37(a)." *Id.* Among other reasons, the court emphasized that "Rule 37(a)(3) sets forth a list of 'Specific Motions' to which the rule applies, which does not include motions to compel patent disclosures," and further emphasized that "the language of the Rule is specific in applying when a party 'fails' to answer an interrogatory (or make a disclosure, etc.), but does not mention situations where there is a dispute as to the sufficiency of an interrogatory response." *Id.* "[I]n light of the precise language used in Rule 37(a), the court decline[d] to apply the Rule" and denied "defendant's motion to the extent that it is premised on Rule 37(a)." *Id.*[5] For the reasons explained above, the Court is persuaded by this analysis of Rule 37(a).[6]

---

[4] The CMO in this case is largely patterned after the Northern District of California's Patent Local Rule 3-1 for "Asserted Claims and Infringement Contentions." (*Compare* Doc. 33 ¶ 5(A)(1)-(8) *with* Patent LR 3-1 (N.D. Cal.)).

[5] The *Perfect Surgical Techniques* court separately addressed whether to impose Rule 37(b) sanctions. *Id.*at *4. But here, Firman has made clear that it is not seeking sanctions and does not cite Rule 37(b) anywhere in its briefing. (Doc. 295 at 7.) At any rate, Rule 37(b) appears inapplicable for other reasons. Rule 37(b)(2)(A) provides for sanctions where a party "fails to obey an order to provide or permit discovery." *Id.* Firman has not argued that Champion violated the CMO. Nor has Firman argued that the Claim Construction Order is "an order to provide or permit discovery" under Rule 37(b).

[6] Because Firman does not cite Rule 37(c) or argue that the Court could compel Champion to further amend its Amended Infringement Contentions under Rule 37(c), the Court declines to *sua sponte* analyze the potential applicability of that provision under these circumstances. *Margolin v. Nat'l Ass'n of Imm. Judges*, 608 U.S. 339, 342 (2026) ("Federal courts adhere to the principle of party presentation. That principle—the rule that

In a related vein, it is telling that Firman has not cited, and the Court has not located, any case in which (1) a plaintiff amended its infringement contentions in response to the issuance of a claim construction order, and (2) the court thereafter granted a motion to compel *further* amended infringement contentions because the plaintiff's amended infringement contentions did not adequately apply the court's claim constructions. The absence of such authority, although not dispositive, speaks volumes. Indeed, Firman largely relies on cases in which courts addressed requests for attorneys' fees under 35 U.S.C. § 285—which provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party"—after the plaintiff pursued infringement claims that contravened the court's claim constructions. *See, e.g.*, *Taurus IP, LLC v. DaimlerChrysler Corp.*, 726 F.3d 1306, 1328 (Fed. Cir. 2013); *In re PersonalWeb Techs. LLC*, 85 F.4th 1148, 1160 (Fed. Cir. 2023); *Clinicomp Int'l, Inc. v. Cerner Corp.*, 2023 WL 1767008, *10 (S.D. Cal. 2023); *Upaid Sys., Ltd. v. Card Concepts, Inc.*, 2022 WL 4482762, *3 (N.D. Ill. 2022); *Datatern, Inc. v. MicroStrategy Inc.*, 2018 WL 2694458, *14-15 (D. Mass. 2018); *Cambrian Sci. Corp. v. Cox Commc'ns, Inc.*, 79 F. Supp. 3d 1111, 1115 (C.D. Cal. 2015). Although the Court is sympathetic to Firman's argument that it should not have to litigate objectively baseless infringement claims, any motion premised on 35 U.S.C. § 285 is premature at this stage.

*In re Papst* does not compel a different conclusion. There, "Papst filed its Asserted Claims and Infringement Contentions pursuant to the [court's second procedural order]." 273 F.R.D. at 341. Thereafter, "[t]he [c]ourt held a *Markman* hearing . . . and rendered its final claims construction opinion and order." *Id.* Following the issuance of the claim construction order, the court "entered a Minute Order requiring the parties to 'meet and confer and jointly submit a focused discovery proposal and deadlines.'" *Id.* The court then held a status conference to discuss the parties' proposed discovery schedule, and "[a]t that

---

points not argued will not be considered—distinguishes our adversarial system of justice from an inquisitorial one. Because courts are essentially passive instruments of government, we rely on the parties to frame the issues for decision and decide only the questions presented.") (cleaned up).

conference, the [c]ourt noted that Papst had failed to propose focused discovery as ordered by the [c]ourt and ordered Papst to bring its asserted claims and infringement contentions up-to-date in light of the Modified Order on claims construction." *Id.* The court explained that, following the issuance of the claim construction order, Papst had not changed its infringement contentions, had not "indicated it wants to change them," and had not "indicated it plans or needs to change them," and the court was concerned that not "all of [Papst's] contentions [could] stand in light of the claims construction decision." *Id.* Following that status conference, the court issued a sixth procedural order that "defined the specificity required for Papst's Final Contentions." *Id.* at 341-42. Papst then "filed its Final Contentions," and "the Camera Manufacturers move[d] for sanctions" under Rules 16 and 37 "[b]ecause those Final Contentions fail[ed] to comply with the Sixth [procedural order] and fail[ed] to satisfy the goal set out by the [c]ourt at the . . . status conference." *Id.* at 342.

The court held that "[a]n order imposing sanctions under Rules 16(f) and 37(b) may be entered against a party who fails to comply with court ordered requirements for the disclosure of infringement contentions." *Id.* at 342-43 (citing *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1363 (Fed. Cir. 2006)). The court found that Papst's final contentions "flouted the Court's direct order" in its sixth procedural order and at the status hearing. *Id.* at 343. Among other things, the court found that: (1) "Papst's Final Contentions intentionally obfuscate Papst's infringement theories"; (2) "[t]he Final Contentions are purposefully vague" and "drafted to further Papst's intention to engage in protracted and expensive litigation"; (3) Papst's final contentions failed to provide a "chart identifying specifically where each limitation of each asserted claim is found within each Accused Instrumentality," as required by the sixth procedural order; and (4) "Papst's Final Contentions [were] vague and nonspecific with regard to certain of the accused products" and claimed that Papst "reserve[d] the right to accuse even more devices," and "[s]uch contentions violate the orders of the [c]ourt as stated in the [sixth procedural order] and at the . . . hearing because they are imprecise and without limit." *Id.* at 343-45 (cleaned up).

The court also found that Papst's final contentions used "a new phrase, invented by Papst to avoid the requirements of the Court's" claim construction order, and "lack[ed] the requisite specificity because they repeatedly reiterate[d] Papst's version of previously rejected claims constructions and then advance[d] theories based on such rejected constructions." *Id.* at 344. As a "sanction for [Papst's] blatant disregard of the Sixth [procedural order] and the Court's orders at the . . . hearing," the Court, among other things, "barred [Papst] from modifying its Final Contentions" and "from advancing any arguments for infringement . . . that are not based solely on th[e] [c]ourt's constructions of the Patents." *Id.* at 346.

*In re Papst* is distinguishable for several reasons. First, although the court there "ordered Papst to bring its asserted claims and infringement contentions up-to-date in light of the Modified Order on claims construction," it did so because, following the issuance of the claim construction order, Papst made no attempt whatsoever to amend its infringement contentions to comply with that order. *Id.* at 341. Instead, it appears that Papst—which the court acknowledged was "in the business of litigation"—had no intention of amending its infringement contentions to comply with the claim construction order and sought broad discovery based on its outdated infringement contentions. *Id.* at 341, 343. In contrast, Champion voluntarily agreed to amend its infringement contentions with the express purpose of conforming them to the Claim Construction Order. (Doc. 284.) Of course, Firman disputes whether Champion's Amended Infringement Contentions adequately apply the Court's claim constructions, but Champion's conduct is still a far cry from Papst's conduct.

Second, the relief sought by the movants in *In re Papst* was the issuance of sanctions under Rules 16 and 37(b). *Id.* at 342. Rule 16(f)(1)(C) permits a court to "issue any just orders, including those authorized by Rule 37(b)(2)(A)(ii)-(vii), if a party or its attorney . . . fails to obey a scheduling or other pretrial order." *Id.* But Firman has made clear that it is *not* seeking sanctions (Doc. 295 at 7), nor has Firman identified any scheduling or other order that was violated. For example, Firman has not argued that Champion's

Amended Infringement Contentions fail to include any of the "information" required by paragraph 5 of the CMO. (Doc. 33 ¶ 5(A)(1)-(8).) As for the Claim Construction Order, Firman has not cited any authority supporting that a claim construction order is a "scheduling or other pretrial order" under Rule 16. Although the court in *In re Papst* observed that Papst's Final Contentions contravened the claim construction order, the court independently concluded that Papst had violated its sixth procedural order in several respects. Because a procedural order is a "scheduling or other pretrial order," the imposition of sanctions in *In re Papst* was consistent with Rule 16. In contrast, there has been no violation of a "scheduling or other pretrial order" that might warrant the imposition of Rule 16 sanctions here, and at any rate, Firman has expressly disavowed that it is seeking sanctions.

Third, the court in *In re Papst* appears to have done the opposite of what Firman requests in its motion to compel. Firman seeks an order compelling Champion to amend its infringement contentions, whereas the court in *In re Papst* "barred [Papst] from modifying its Final Contentions." 273 F.R.D. at 346.[7]

To be sure, the court in *In re Papst* also "barred [Papst] from advancing any arguments for infringement . . . that are not based solely on this Court's constructions of the Patents." *Id.* To that end, the Court wishes to be perfectly clear: Champion will not be allowed to advance any infringement theories in this case that contravene the Claim Construction Order. *Cf. Taurus IP*, 726 F.3d at 1328 ("[A] party cannot assert baseless

---

[7] Firman also argues that its motion "is presented through a proper vehicle" because "the parties stipulated to regular motion practice" and its motion "was presented properly according to the parties' stipulation." (Doc. 295 at 7.) But the parties' stipulation expressly provided that Firman could file its motion to compel "without Champion agreeing this dispute is properly characterized as a discovery dispute." (Doc. 284 ¶ 6.) Firman also invokes the Court's "inherent authority to enforce its orders" and cites *In re Papst* (which is distinguishable for reasons explained in this order) and *B-K Lighting*. (Doc. 295 at 8.) *B-K Lighting* is also distinguishable because, there, the court was deciding whether to invoke its inherent authority to strike portions of B-K's expert report based on "B-K's expert discuss[ing] new infringement claims that were not included in B-K's preliminary infringement contentions" and were asserted "after the patent claims ha[d] been construed and discovery tailored to the theories presented in the initial infringement contentions ha[d] closed." 930 F. Supp. 2d at 1133-35. In contrast, discovery here is not closed and the parties have not served expert reports.

infringement claims and must continually assess the soundness of pending infringement claims, especially after an adverse claim construction.”). The conclusion in this order that Firman has not identified a valid procedural mechanism through which Champion may be compelled to amend its Amended Infringement Contentions should not be viewed as a determination that Champion’s Amended Infringement Contentions substantively comply with the Court’s claim constructions.[8]

Champion is thus on notice that it proceeds at its own peril. To the extent Champion seeks to rely on an infringement theory based on a “selector switch” that itself performs the fuel selection, the Claim Construction Order was clear that Champion’s “selector switch is *never* described—in the patent specification or the claims—as itself performing the selection” but is rather “consistently described as permitting or enabling selection of one fuel source *by preventing or inhibiting selection of the other fuel source*.” (Doc. 280 at 30, emphasis added.) And to the extent Champion seeks to rely on an infringement theory based on the “selective control” of fuel flow being performed by something other than a mechanical fuel valve—including to the extent Champion seeks to advance an infringement theory based on “the mechanical fuel valve trigger[ing] some other electrical valve which itself performs the selective control of fuel flow” (*id.* at 85-86)—the Claim Construction Order was clear that the adverb “mechanically” was added to the Court’s tentative construction “*to clarify that it is the mechanical fuel valve performing the selective control of fuel flow*, and not the mechanical fuel valve indirectly impacting fuel flow by triggering an electrical valve which itself performs the selective controlling of fuel flow.” (*Id.* at 85, emphasis added.) Should Champion choose to advance infringement theories in this case that contravene the Claim Construction Order, there may be consequences down the line, including, but not necessarily limited to, exclusion of expert testimony and/or an award of attorneys’ fees.

---

[8] Firman’s reply brief cites several cases in which courts excluded expert testimony that contravened a claim construction order and argues that Champion cannot “sneak in its preferred construction over the court’s construction under the guise of expert testimony.” (Doc. 295 at 7.) If, at a later stage of this case, Firman believes Champion’s experts’ opinions contravene the Claim Construction Order, Firman may seek appropriate relief.

Accordingly,

**IT IS ORDERED** that Firman's motion to compel compliant infringement contentions (Doc. 288) is **denied**.

Dated this 17th day of September, 2026.

Dominic W. Lanza
United States District Judge